## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| UPHEALTH HOLDINGS, INC., *et al.*,[1] | Case No. 23-11476 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Obj. Deadline: March 27, 2024 at 4:00 p.m. (ET)** |
| | **Hearing Date: April 9, 2024 at 10:00 a.m. (ET)** |

### MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER (I) AUTHORIZING THE SALE OF CERTAIN DE MINIMIS ASSETS OF DEBTOR THRASYS, INC.; (II) AUTHORIZING THE DESTRUCTION OF DEBTOR THRASYS, INC.'S SOURCE CODE; AND (III) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (the "Debtors") in the above-captioned cases ("Chapter 11 Cases"), by and through their counsel, DLA Piper LLP (US), hereby submit this motion (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), (i) authorizing and approving the sale of certain assets having little value (the "De Minimis Assets") of Debtor Thrasys, Inc. ("Thrasys") to non-debtor affiliate TTC Healthcare, Inc. ("TTC") as contemplated by that certain bill of sale (the "Bill of Sale") attached to the Proposed Order as **Exhibit 1**; (ii) authorizing, but not directing, the destruction of the Source Code (as defined below); and (iii) granting related relief. In support of this Motion, the Debtors respectfully state as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtors' federal tax identification number, are as follows: UpHealth Holdings, Inc. (6328); Thrasys, Inc. (7413); Comprehensive Care Alliance LLC (6965); Behavioral Health Services LLC (8110); BHS Pharmacy LLC (2475); Psych Care Consultants LLC (8822); and Reimbursement Solutions LLC (6388). The Debtors' headquarters and the mailing address is 14000 S. Military Trail, Suite 202, Delray Beach, FL 33484.

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over these Chapter 11 Cases, the Debtors, property of the Debtors' estates, and this matter under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b).

2.      The Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with article III of the United States Constitution.

3.      Venue of these cases in this District is proper under 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105, 363, and 554 of title 11 of the United States Code (the "Bankruptcy Code") and rules 6003, 6004, and 6007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

**A.      General Background.**

5.      On September 19, 2023, UpHealth Holdings, Inc. and on October 20, 2023 (with September 19, 2023, the "Petition Dates"), each other Debtor filed a voluntary petition for relief with the Court under the Bankruptcy Code, thereby commencing these Chapter 11 Cases.

6.      As of the date hereof, no trustee or examiner has been appointed in these Chapter 11 Cases.  On November 3, 2023, the Office of the United States Trustee appointed an official committee of unsecured creditors ("Committee") in these Chapter 11 Cases.

7.      Additional factual background regarding the Debtors, including their business operations, capital and debt structures, and the events leading to the filing of these Chapter 11 Cases, is set forth in the *Declaration of Martin S. A. Beck in Support of the Filing of the Petitions*

2

*and Certain Pleadings* [D.I. 35] (the "Beck Declaration"), which is incorporated herein by reference.

**B.      Thrasys Winddown.**

8.      As detailed in the *Motion of the Debtors for Entry of an Order (I) Approving the Transition Agreements with Customers; (II) Authorizing the Assumption and Assignment of Executory Contracts; and (III) Granting Related Relief* [D.I. 155] (the "Transition Motion"),[2] Thrasys entered into, and effectuated, certain transition agreements whereby Thrasys granted a perpetual non-exclusive license of certain source codes and the SyntraNet technology platform (collectively, the "Source Code") to its Customers (the "Transition Transactions").

9.      The Transition Transactions closed on December 28, 2023.  As part of the Transition Transactions, Thrasys transitioned its employees to the Customers and, aside from maintenance and transition services, has wound down its business.

**(i)      Sale of Certain De Minimis Assets to TTC.**

10.      Having consummated the Transition Transactions, Thrasys seeks to take the next step in ceasing all operations by liquidating its remaining De Minimis Assets to affiliate TTC.  As further described in the Bill of Sale, the De Minimis Assets are largely used computers and related equipment, as well as certain artwork and furniture.  TTC is able to make immediate use of the De Minimis Assets, and the alternative would be to sell the assets for forced liquidation value, which would garner little to no value.  Moreover, the sale of the De Minimis Assets will realize $56,080.00 to Thrasys.  This value was established by the Debtors based on examining public sources for values of similar goods.  Each of the De Minimis Assets on their own are of little value,

---

[2]      Any capitalized terms not defined herein have the same meaning given to them in the Transition Motion.

and the cost of running a sale process for the De Minimis Assets would be costly and time consuming.

11.     In compliance with Local Rule 6004-1(b)(iv), the Debtors provide the following detail with respect to sale of the De Minimis Assets:

a.  <u>Sale to Insider</u>.  TTC and Thrasys are affiliates under the Bankruptcy Code.

b.  <u>Agreements with Management</u>.  No employee or management of Thrasys is receiving any employment offers from TTC as part of or in any way connected to the contemplated sale of the De Minimis Assets.

c.  <u>Private Sale/No Competitive Bidding and Protections for the Purchaser</u>.  The Debtors are seeking approval for a proposed private sale of the De Minimis Assets to TTC free and clear of all liens, claims, encumbrances, and other interests, as conditioned upon the terms of the Bill of Sale.  The Bill of Sale does not contemplate protections for TTC in the form of a break-up fee or expense reimbursement.  The Bill of Sale does not restrict the Debtors' ability to solicit or consider higher or otherwise better bids in the exercise of their fiduciary duties.

d.  <u>Releases</u>.  Neither the Bill of Sale nor the Proposed Order contemplate the release of any entity or claims against an entity.

e.  <u>Closing and Other Deadlines</u>.  TTC shall take immediate possession of and title to the goods upon the execution of the Bill of Sale.  There is no closing date or outside deadline by which the Bill of Sale must be executed or consummated.

f.  <u>Good Faith Deposit.</u>  TTC is not required to provide a good faith deposit.

g.  <u>Interim Arrangements with the Purchaser</u>.  Not applicable.

h.  <u>Use of Proceeds</u>.  Neither the Bill of Sale nor the Proposed Order addresses the use of proceeds generated by the sale, however, the Debtors benefit from a final order permitting use of cash collateral. The proceeds will be cash collateral.

i.  <u>Tax Exemption</u>.  The Debtors are not seeking to have the sale declared exempt from taxes under section 1146(a) of the Bankruptcy Code.

j.  <u>Record Retention</u>.  Not applicable.

k.  <u>Sale of Avoidance Actions</u>.  The Debtors are not seeking to sell avoidance actions or any other cause of action of Thrasys.

l.  <u>Requested Findings as to Successor Liability</u>.  Not applicable.

m.  <u>Sale Free and Clear of Unexpired Leases</u>.  Not applicable.

ACTIVE\1607242116.3

n.   <u>Credit Bid</u>.  Not applicable.

o.   <u>Relief from Bankruptcy Rule 6004(h) (Proposed Order ₱ 11)</u>.  The Debtors are seeking relief from the fourteen-day stay imposed by Bankruptcy Rule 6004(h) for the private sale.

**(ii)    Deletion of the Source Code.**

12.     Further, under the Transition Transactions, Thrasys is not required to maintain the Source Code.  The Customers have all the relevant data and technology needed to use and recreate the benefits of the Source Code on their own.  Continued maintenance of the Source Code by Thrasys is costly and of no benefit to Thrasys or any of the other Debtors' estates.  The Source Code is no longer necessary to any aspect of Thrasys' or the Debtors' business, and no aspect of the Source Code is required to be maintained under any applicable regulatory law or any licensing requirement.  Accordingly, there is ample cause to allow the destruction of the Source Code

## RELIEF REQUESTED

13.     By this Motion, the Debtors seek entry of the Proposed Order, pursuant to sections 105, 363, and 554 of the Bankruptcy Code and Bankruptcy Rules 6004 and 6007, and Local Rule 6004-1(b), (i) authorizing and approving the sale of the De Minimis Assets of Thrasys to TTC; (ii) authorizing, but not directing, the destruction of the Source Code, and (iii) granting other related relief.

## BASIS FOR RELIEF

**A.    The Sale of De Minimis Assets Is Appropriate Under Section 363(b)(1) of the Bankruptcy Code and Bankruptcy Rule 6004(f)(1).**

14.     Section 363(b) of the Bankruptcy Code provides that a debtor "may use, sell, or lease, other than in the ordinary course of business, property of the estate."

15.     Courts review a debtor's decision to use, sell, or lease property out of the ordinary course under the business judgment rule.  *In re Culp*, 550 B.R. 683, 697 (D. Del. 2015) ("'In

determining whether to authorize use, sale or lease of property of the estate under Section 363, courts require [the Debtor] to show that a sound business purpose justifies such actions.' If the [Debtor's] decision evidence a sound business purpose, then the Bankruptcy Court should approve the sale." (quoting *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999)).

16.    "Under Delaware law, the business-judgment rule operates as a presumption 'that directors making a business decision, not involving self-interest, act on an informed basis, in good faith and in the honest belief that their actions are in the corporation's best interest.'" *Continuing Creditors' Comm. Of Star Telecoms., Inc. v. Edgecomb*, 385 F. Supp. 2d 449, 462 (D. Del. 2004) (quoting *Grobow v. Perot*, 539 A.2d 180, 187 (Del. 1988)); *accord Ad Hoc Comm. Of Equity Holders of Tectonic Network, Inc. v. Wolford*, 554 F. Supp. 2d 538, 555 n.111 (D. Del. 2008).

17.    Once debtors articulate a valid business justification, their decision to use, sell, or lease property out of the ordinary course of business enjoys a strong "presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in an honest belief that the action taken was in the best interests of the company." *In re Integrated Res. Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)). Therefore, any party objecting to a debtor's proposed use, sale, or lease must make a showing of "bad faith, self-interest, or gross negligence," as courts are loath to interfere with corporate decisions absent such a showing. *See id*. at 656; *see also In re Promise Healthcare Group, LLC*, et al., Case No. 18-12491 (CSS) [D.I. 770] (order approving the private sale of the Debtors' certain Louisiana facilities upon the debtors' showing that they properly exercised their business judgment and set forth sound business justifications for pursuing such a private sale, having marketed the private sale and showing that the purchaser was the only bidder for the Louisiana facilities that could close a sale promptly on terms favorable to the debtors).

6

18.     The Debtors, in their business judgment, believe that the sale of the De Minimis Assets represents the best available use for the De Minimis Assets.  The Debtors are receiving $56,080.00 in consideration for the De Minimis Assets from TTC, whereas the alternative would be to hold one or more auctions to sell the De Minimis Assets at forced liquidation value, with the costs and delays of such auctions likely destroying any value generated by such sales.  Moreover, all interested parties are receiving notice of the relief requested in this Motion and, should another party be interested in purchasing the De Minimis Assets, the Debtors will entertain all such offers, consistent with their fiduciary duties.  Selling the De Minimis Assets to TTC, another subsidiary of UpHealth Holdings, Inc. that will actually gain utility from the De Minimis Assets, is preferable to a fire sale or complete abandonment of the assets.

19.     Given the ability of TTC to utilize the De Minimis Assets and lack of real alternatives, the Debtors submit that the sale of the De Minimis Assets to TTC is appropriate, will maximize value, and should be approved.

**B.     The Sale of the De Minimis Assets is Proposed in Good Faith.**

20.     Section 363(m) of the Bankruptcy Code provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

21.     Section 363(m) "reflects the . . . 'policy of not only affording finality to the judgment of the bankruptcy court, but particularly to give finality to those orders and judgments upon which third parties rely.'"  *Abbotts Dairies of Penn., Inc.*, 788 F.2d at 147 (quoting *In re Vetter Corp.*, 724 F.2d 52, 55 (7th Cir. 1983)).  *See also United States v. Salerno*, 932 F.2d 117,

ACTIVE\1607242116.3

123 (2d Cir. 1991) (noting that section 363(m) furthers the policy of finality in bankruptcy sales and "assists bankruptcy courts in maximizing the price for assets sold in such proceedings").

22.     While the Bankruptcy Code does not define "good faith," some courts have held that a good faith purchaser is one who "purchases the assets for value, in good faith, and without notice of adverse claims." *Hardage v. Herring Nat'l Bank*, 837 F.2d 1319, 1323 (5th Cir. 1988) (*quoting In re Willemain*, 764 F.2d 1019, 1023 (4th Cir. 1985)).

23.     The proposed sale of De Minimis Assets to TTC has been proposed in good faith. The Bill of Sale is the product of extensive good faith, arms'-length negotiations between the Debtors, on the one hand, and TTC, on the other.  The Debtors believe and submit that the sale of the De Minimis Assets pursuant to the terms and conditions of the Bill of Sale is not the product of collusion or bad faith.  In connection with approval of the proposed sale, the Debtors request that the Court make a finding that TTC is a good faith purchaser and entitled to the protections of section 363(m) of the Bankruptcy Code.

**C.     The Source Code is Burdensome to the Debtors' Estates and can be Abandoned.**

24.     Section 554 of the Bankruptcy Code provides, in relevant part, that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a).  Further, as noted above, section 363 of the Bankruptcy Code permits a trustee to "use, sell, or lease other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

25.     The destruction of the Source Code is also governed by Bankruptcy Rule 6007, which provides, in pertinent part, as follows:

> **Notice of Proposed Abandonment or Disposition; Objections; Hearing**. Unless otherwise directed by the court, the trustee or debtor in possession shall give notice of a proposed . . . disposition of property to the United States trustee, all creditors, indenture trustees, and committees elected pursuant to §705 or appointed pursuant to §1102 of the Code. A party in interest may file and serve an objection within 14 days of the mailing of

the notice, or within the time fixed by the court. If a timely objection is made, the court shall set a hearing on notice to the United States trustee and to other entities as the court may direct.

Fed. R. Bankr. P. 6007.

26.    Courts have held that "[t]he trustee's power to abandon property is discretionary." *In re Slack,* 290 B.R. 282, 284 (Bankr. D.N.J. 2003) (citations omitted).  A trustee may abandon estate assets that are of "inconsequential value and benefit to the estate" or that are "burdensome to the estate."  *In re Reich,* 54 B.R. 995, 1004 (Bankr. E.D. Mich. 1985); *see In re Contract Research Solutions, Inc.,* 2013 Bankr. LEXIS 1784, at *11-12 (Bankr. D. Del. May 1, 2013) (granting request to abandon personal property at leased location that, according to the debtors, was of negligible commercial value, storing it created a burden on the estate, and abandonment would pose no threat to public safety and would not contravene any law or regulation).  The decision to abandon must merely reflect "business judgment made in good faith" that rests on a reasonable basis.  *In re Cult Awareness Network, Inc.,* 205 B.R. 575, 579 (Bankr. N.D. Ill. 1997).

27.    "Courts defer to the trustee's judgment and place the burden on the party opposing the abandonment to prove a benefit to the estate and an abuse of the trustee's discretion." *Id.* "The party opposing the abandonment must show some likely benefit to the estate, not mere speculation about possible scenarios in which there might be a benefit to the estate." *Id.* "The court only needs to find the trustee made: 1) a business judgment; 2) in good faith; 3) upon some reasonable basis; and 4) within the trustee's scope of authority." *Id.*

28.    All the conditions to abandonment are satisfied here.  The Debtors have determined that there is no further use of the Source Code, given that the Debtors have transitioned the use of the Source Code to the Customers through the Transition Transactions.  Accordingly, there is no economic purpose to maintain the Source Code; indeed, maintaining it is costly with no commensurate benefit to the estates.  No party in interest will be prejudiced by the abandonment

9

and destruction of the Source Code, and the Debtors do not need to maintain the Source Code in order for the counterparties to the Transition Transactions to still obtain the benefit of those agreements.

## WAIVER OF BANKRUPTCY RULE 6004(h)

29. The Debtors respectfully request that the Court waive the fourteen day stay period under Bankruptcy Rule 6004(h). Timely consummation of the proposed sale is of critical importance to Thrasys and TTC and is vital to the Debtors' efforts to maximize the value of its estate. Accordingly, the Debtors hereby request that the Court waive the fourteen day stay period under Bankruptcy Rule 6004(h).

## WAIVER OF BANKRUPTCY RULE 6007

30. Among other things, Bankruptcy Rule 6007(a) requires that the Debtors serve a copy of this Motion, "[u]nless otherwise directed by the court" on "all creditors." Fed. R. Bank. Pro. 6007(a). The Debtors' creditor matrix contains thousands of parties. Accordingly, serving the Motion upon all such parties would be unnecessarily burdensome and costly. The Debtors will serve a copy of this Motion and related documents on the parties in interest set forth below and, therefore, requests, to the extent required, a limited waiver of the service requirement set forth in Bankruptcy Rule 6007. The Debtors submit that the requested waiver is appropriate and will properly and timely effectuate notice to the largest parties in interest.

## NOTICE

31. Subject to the requested waiver of Rule 6007 notice of this Motion will be provided in accordance with the Local Rules to: (i) the Office of the United States Trustee for Region 3; (ii) counsel to the Official Committee of Unsecured Creditors, (iii) counsel to Wilmington Trust, National Association, as trustee; (iv) counsel to the Debtors' ad hoc group of noteholders; (v) the Customers and (vi) any party that has requested notice pursuant to Bankruptcy Rule 2002. In light

10

of the nature of the relief requested in this Motion, the Debtors respectfully submit that no further

notice is necessary.

       **WHEREFORE**, for the reasons set forth herein, the Debtors respectfully request entry of

the Proposed Order granting the relief requested in the Motion, the relief requested in this Motion

and such other and further relief as this Court may deem just and proper.

Dated: March 12, 2024
       Wilmington, Delaware

           Respectfully submitted,

**DLA PIPER LLP (US)**

_/s/  Stuart M. Brown_
Stuart M. Brown (DE 4050)
1201 N. Market Street, Suite 2100
Wilmington, DE 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2462
Email:  stuart.brown@us.dlapiper.com

*-and-*

Richard A. Chesley, Esq. (admitted *pro hac vice*)
Jamila Justine Willis, Esq. (admitted *pro hac vice*)
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501
Email:  richard.chesley@us.dlapiper.com
          jamila.willis@us.dlapiper.com

*Counsel to the Debtors*