IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| UPHEALTH HOLDINGS, INC., *et al.* | ) ) ) | Case No. 23-11476 (LSS) |
| Debtors.[1] | ) ) ) | (Jointly Administered) |
|  | ) | Ref. Docket No. 864 |

**GLOCAL PARTIES' OPPOSITION TO DEBTORS' MOTION FOR
ENTRY OF AN ORDER (I) STRIKING DOCKET ENTRY NO. 857,
(II) IMPOSING SANCTIONS AND (III) GRANTING RELATED RELIEF**

Glocal Healthcare Systems Private Limited ("**Glocal**"), Dr. Syed Sabahat Azim, Ms. Richa Sana Azim, Mr. Gautam Chowdhury, and Kimberlite Social Infra Private Limited (collectively, the "**Glocal Parties**"), by and through their undersigned counsel, submit this opposition (the "**Opposition**") to the *Debtors' Motion for Entry of an Order (I) Striking Docket Entry No. 857, (II) Imposing Sanctions and (III) Granting Related Relief* [D.I. 864] (the "**Motion**") filed by the Debtors,[2] and respectfully state the matters set forth below.

**SUMMARY OF OPPOSITION**

1. The Motion should be denied. It is a misplaced attempt to create an issue where one does not exist.

2. The Glocal Parties' Statement and Reservation of Rights [D.I. 857] (the "**Statement**") was filed for a simple reason: to reserve the rights of the Glocal Parties as it concerns the ongoing

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: UpHealth Holdings, Inc. (6328); Thrasys, Inc. (7413); Comprehensive Care Alliance LLC (6965); Behavioral Health Services LLC (8110); BHS Pharmacy LLC (2475); Psych Care Consultants LLC (8822); and Reimbursement Solutions LLC (6388). The Debtors' headquarters and the mailing address is 14000 S. Military Trail, Suite 202, Delray Beach, FL 33484.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

dispute over the ownership of Glocal. At the same time, the Statement provides the Court and other parties in interest in the Chapter 11 Cases with context regarding the complex, multi-jurisdictional nature of the dispute between the Debtors and the Glocal Parties. The Statement seeks no affirmative relief and, importantly, raises no issues unknown to the Debtors.[3]

3. Contrary to the Debtors' assertions, the Statement contains no false or misleading information. Even after the Debtors demanded that the Glocal Parties withdraw the Statement, the Glocal Parties repeatedly asked the Debtors to meet and confer regarding the Statement so that the Debtors could specifically identify any alleged false and misleading information. This would have allowed the parties to work together, in good faith, to determine whether the Glocal Parties' rights could be advanced or reserved in a different manner or the Statement should be revised, avoiding the need for the Motion. While the Debtors eventually indicated that they would be willing to meet and confer, a pre-condition to doing so was the Glocal Parties withdrawing the Statement before any meet and confer, which was an unreasonable stance. *See* **Exhibit A** to the *Declaration of Robert F. Poppiti, Jr. in Support of Glocal Parties' Opposition to Debtors' Motion for Entry of an Order (I) Striking Docket Entry No. 857, (II) Imposing Sanctions and (III) Granting Related Relief* ("**Poppiti Declaration**"). Instead, the Debtors proceeded to file the Motion and seek unwarranted

---

[3] To be clear—this is not even the first time the Glocal Parties have identified the ownership dispute in a filing with this Court. In Glocal's corporate ownership statement, filed on July 9, 2024, the Glocal Parties stated:

> Glocal has no parent corporation. UpHealth, Inc., through its wholly-owned subsidiary UpHealth Holdings, Inc. (a Debtor in these Chapter 11 Cases), owns 16.56%[2] of Glocal's shares on a fully diluted basis. No other publicly-held corporation owns 10% or more of Glocal's stock.

Adv. Pro. No. 24-50092 (LSS), [D.I. 3] at ¶ 1. Footnote 2 in the same filing further states "UpHealth Holdings, Inc.'s ownership percentage remains in controversy pending resolution of the parties' various disputes." *See also* Glocal's corporate ownership statement in the proceeding before the United States District Court for the Northern District of Illinois filed on June 13, 2024, which is materially identical. *UpHealth Holdings, Inc. v. Glocal Healthcare Systems Private Limited, et al*, No. 1:24-cv-3778, D.I. 55.

2

sanctions against the Glocal Parties and their counsel. The Glocal Parties respectfully submit that the Motion and the tactics associated with it should be rejected by this Court.

4. The Debtors incorrectly claim the Statement is procedurally improper because they believe that nothing in the Bankruptcy Code or the Bankruptcy Rules expressly authorizes the Glocal Parties to file it. Notably, there is nothing inappropriate, procedurally or otherwise, with respect to the Statement, nor does anything in the Bankruptcy Code or the Bankruptcy Rules prohibit its filing.[4] On the contrary, the Statement was only filed *after and in response to* a series of papers in the Chapter 11 Cases, including the *Declaration of Jay Jennings Adopting Prior Declarations of Martin S.A. Beck* [D.I. 809] (the "**Jennings Declaration**").[5] The Jennings Declaration not only adopted the declarations of Martin S.A. Beck but also purported to "correct" the Debtors' own organizational chart to indicate that as of the date of the Jennings Declaration, UpHealth Holdings, Inc. owned 94.81% of Glocal—*without* disclosing the ownership dispute. The Glocal Parties filed the Statement to make clear to the Court and other interested parties that the ownership is disputed in pending litigation and that the Glocal Parties reserved all rights with respect to the asserted ownership. It is not uncommon practice in chapter 11 cases for parties to file reservations of rights and similar statements of position with respect to issues in dispute.[6]

---

[4] It is telling that the Debtors cite no authority to support their position on this point. Long-established bankruptcy principles support the opposite position. *See, e.g.*, 11 U.S.C. § 1109 (authorizing parties in interest to raise and appear and be heard on "any issue in a case" under chapter 11); *see also In re Vantage Drilling Int'l*, 603 B.R. 538, 545 (D. Del. 2019) ("[Section 1109] has been construed to create a broad right of participation in Chapter 11 cases.") (internal quotation marks omitted); *Truck Ins. Exch. v. Kaiser Gypsum Co., Inc.*, 144 S. Ct. 1414, 1425 (2024) ("Congress consistently has acted to promote greater participation in reorganization proceedings.").

[5] The Debtors have made that representation throughout the Chapter 11 Cases, even after the Glocal Parties filed the adversary proceeding. *See, e.g.*, *Third Supplemental Declaration of Richard Chesley on Behalf of DLA Piper LLP (US)* [D.I. 820].

[6] *See, e.g.*, *Informational Brief of the Ad Hoc Committee of Certain Talc Claimants Regarding Second Bankruptcy Filing by LTL Management, LLC*, Case No. 23-12825 (MBK) (Bankr. D.N.J. Apr. 10, 2023) (D.I. 79) (explaining the history of the J&J divisive merger and the LTL bankruptcy cases, including the Ad Hoc Group's assertions with respect to the issues in dispute).

5. Indeed, in the Motion, the Debtors incorrectly assert that the Glocal Parties have not raised the ownership issue in the ongoing litigation in the Northern District of Illinois, thereby suggesting that the Debtors will use such 'failure' against them in the future. It is for this very reason that the Glocal Parties filed the Statement: to avoid a scenario in which the Debtors assert that any rights of the Glocal Parties have been waived with respect to the ownership dispute.

6. Further, there is no basis for sanctions. Any purported prejudice incurred by the Debtors in preparing and filing their Motion is self-imposed. The Statement was filed in good faith with the legitimate purpose of reserving the Glocal Parties' rights with respect to a known disputed issue to which the Debtors, including by their own actions of "correcting" their own inconsistent positions, made relevant and necessary for the Glocal Parties to respond. And the Debtors refused to meet and confer before filing the Motion, instead demanding that the Statement be withdrawn before any discussion could occur. For these reasons, as set forth below, the Court should deny the Motion.

## ARGUMENT

### A. The Court Should Ignore the Debtors' Entirely Irrelevant and Misleading Descriptions of Related Proceedings

7. The Debtors present the Court with over ten pages of misleading factual and procedural background that is irrelevant to the Motion. In large part, this background information is a reproduction of the narrative in the Debtors' motion to enforce the automatic stay. *Cf. Debtors' Motion to (I) Enforce the Automatic Stay, (II) Award Damages for Willful Violations of the Automatic Stay, and (III) Permit the Debtors to Modify the Automatic Stay in their Sole Discretion to Proceed with Litigation* [D.I. 523] (the "**Automatic Stay Motion**").[7] The Debtors have chosen to adjourn a

---

[7] At the request of the Debtors, the Debtor's Automatic Stay Motion has been adjourned by a stipulated agreement of the parties that this Court has approved. [D.I. 788].

hearing on the Automatic Stay Motion multiple times, including after the Glocal Parties responded to it [D.I. 592]. Although the Glocal Parties dispute the Debtors' characterizations and descriptions of the several pending litigation streams, those factual issues do not bear upon the merits of the Motion. However, to the extent this Court determines such issues should be considered in the context of the Motion, the Glocal Parties incorporate by reference their objection [D.I. 592] to the Debtors' Automatic Stay Motion as though fully set forth herein and reserve all rights with respect to the Debtors' disputed characterizations and descriptions.

     **B.**     **The Court Should Not Strike the Statement**

8.     The Court should deny the Debtors' request to strike the Statement pursuant to section 105(a) of the Bankruptcy Code.

9.     The Debtors move to strike under section 105(a) of the Bankruptcy Code, which authorizes the Court, in its equitable power, to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).[8] Despite this broad grant of equitable power, motions to strike are particularly "disfavored" and should be denied "unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Sun Microsystems, Inc. v. Versata Enters., Inc.*, 630 F. Supp. 2d 395, 402 (D. Del. 2009) (internal quotation marks omitted); *Delaware Health Care, Inc. v. MCD Holding Co.*, 893 F. Supp. 1279, 1292 (D. Del. 1995) ("When faced with allegations that could possibly serve to achieve a better understanding of plaintiff's claims or perform any useful purpose in promoting the just

---

[8] While the Debtors did not move to strike the Statement under FED. R. CIV. P. 12(f), the Court should still look to Rule 12(f) to guide its decision, as stated by the Debtors' own case. *See In re Johnson*, 236 B.R. 510, 520–21 (D.D.C. 1999) ("[T]he Trustee based his motion to strike on 11 U.S.C. § 105 and cited Rule 12(f) as an analogy that the court could examine . . . This argument is persuasive.").

disposition of the litigation, courts generally deny such motions to strike.") (citing 5A Wright & Miller at § 1382, at 695–96).

10. Here, contrary to the Debtors' assertions, the Statement is plainly relevant to these proceedings and serves the legitimate purpose of reserving the Glocal Parties' rights with respect to the ongoing dispute over the ownership of Glocal. As stated above, the Statement was only filed *after* the Debtors filed a series of papers, including the Jennings Declaration, stating that UpHealth Holdings owns 94.81% of Glocal but not mentioning *any* ownership dispute. The Statement was filed to put the Court and other interested parties on notice that the Glocal Parties reserved all rights with respect to the Debtors' position as to the ownership of Glocal. The Debtors injected their views about the ownership dispute into this bankruptcy proceeding.[9] How then can the objective fact that those statements are disputed by the Glocal Parties be irrelevant?

11. The Debtors' attacks on the substance of the Statement are similarly unavailing. Specifically, the Debtors appear to assert that an unconfirmed arbitration award has a preclusive effect on the ownership issue. That notion is incorrect as a matter of law. "An arbitration award is not considered 'final' for purposes of issue preclusion absent judicial confirmation of the award, and, for this reason, unconfirmed arbitral awards have been denied preclusive effect in subsequent litigations." *Shtab v. Greate Bay Hotel & Casino, Inc.*, 173 F. Supp. 2d 255, 261 (D.N.J. 2001) (internal citation omitted); *Gruntal & Co. v. Steinberg*, 854 F. Supp. 324, 337 (D.N.J. 1994) ("Absent judicial confirmation, an arbitration award will not result in a 'final judgment' and cannot, therefore, have

---

[9] The ownership dispute stems from the UpHealth Parties' breaches of the SPA, after which the Glocal Board of Directors cancelled a portion of UpHealth Holdings, Inc.'s shares of Glocal pursuant to Section 179 of the Companies Act of India. Although the UpHealth Parties have not challenged the validity of the cancellation, only an Indian court can resolve the ownership issue. The Award (unconfirmed and subject to a motion to vacate by the Glocal Parties) concerns the Glocal Respondents' alleged SPA breaches but does not directly adjudicate Glocal's cancellation of shares.

6

preclusive effect on subsequent litigation."), *aff'd*, 46 F.3d 1116 (3d Cir. 1994); *see Gen. Comm. of Adjustment, United Transp. Union, W. Maryland Ry. Co. v. CSX R.R. Corp.*, 893 F.2d 584, 593 (3d Cir. 1990) (rejecting that an arbitration award was preclusive, partly because a petition to review the award was pending in another court). Here, not only is the arbitration award unconfirmed, but it is also the subject of the Glocal Parties' motion to vacate that is pending before the United States District Court for the Northern District of Illinois[10] and set for oral argument on September 3, 2024. Notwithstanding the challenge pending to the validity of the Award, the Debtors have not challenged the validity of the action of the Glocal Board in cancelling the claimed shareholding in Glocal. As far as Glocal is concerned, there is no dispute because the shareholding, except to 16.56%, stands cancelled and this was never challenged by the Debtors. As far as the Debtors' claim to 94.81% shareholding is concerned, that is disputed.[11] Furthermore, any suggestion by the Debtors that the Award is preclusive is wrong,[12] and the Glocal Parties' rights are reserved with respect to the ownership dispute.

12. Likewise, the Debtors' argument concerning the Statement's reference to the Glocal Parties being "kept in the dark" is misconstrued. The Debtors argue that the phrase "kept in the dark"

---

[10] *UpHealth Holdings Inc. v. Glocal Healthcare Systems Private Limited et al.,* Case No. 1:24-cv-3778 (N.D. Illinois).

[11] Moreover, the Calcutta High Court orders, which the Debtors rely on extensively, do not transform the Debtors' unconfirmed Award into a judgment with preclusive effect. Neither of those orders contains an independent assessment and final finding on the Award. Instead, they are a preliminary assessment related to the recognition of the emergency Award under Section 9 of the Arbitration and Conciliation Act, 1996—the statutory provision for "*Interim Measures.*" Those court orders offer "*prima facie*" views that summarize allegations. *See* D.I. 864-7 at 8–10 and 864-8 at 7–8.

[12] In Debtor UpHealth Holdings, Inc.'s motion to stay the adversary proceeding, filed subsequently to the Motion, UpHealth Holdings, Inc. recognizes that an arbitration award cannot be preclusive unless it is confirmed. *See* Case No. 24-50092-LSS, D.I. 22 at ¶ 5 ("If the Illinois District Court confirms the Arbitration Award and enters judgment in favor of UpHealth Holdings, that judgment will have preclusive effect on issues that were raised and resolved (or could have been raised) in the Arbitration[.]") and ¶ 31 ("Because confirmation of the Arbitration Award would have preclusive effect on issues raised in the Adversary Proceeding, the Court should stay the Adversary Proceeding pending a decision from the Illinois District Court.").

means that the Glocal Parties completely lacked subjective knowledge of these Chapter 11 Cases, rather than the Glocal Parties' actual and clear meaning: that the Debtors did not provide requisite notice to the Glocal Parties, as required by the Bankruptcy Code and the Bankruptcy Rules.[13]  Had the Debtors complied with the Bankruptcy Code and the Bankruptcy Rules with respect to notice and service of pleadings, the Glocal Parties would have been able to appear, for example, at the first- or second-day hearings in these Chapter 11 Cases to reserve all their rights with respect to the ownership dispute and provide related context, which might have obviated the need to file the Statement.

13. In light of the foregoing, the Debtors' request to strike the Statement should be denied.

**C.    In Any Event, the Sanctions Requested by the Debtors Are Not Warranted**

14. The Debtors' request for sanctions under 28 U.S.C. § 1927 or section 105(a) of the Bankruptcy Code is meritless and should be denied.

15. "[C]ourts should exercise [the power to sanction under § 1927] only in instances of a serious and studied disregard for the orderly process of justice." *LaSalle Nat. Bank v. First Connecticut Holding Group, LLC.*, 287 F.3d 279, 288 (3d Cir. 2002) (internal quotation marks omitted).  "The power to sanction under § 1927 necessarily carries with it the potential for abuse, and therefore the statute should be construed narrowly and with great caution so as not to stifle the enthusiasm or chill the creativity that is the very lifeblood of the law." *Id.* at 289 (internal quotation marks omitted).  "Consequently, sanctions may not be imposed under § 1927 absent a finding that

---

[13] The Debtors admit their failure to properly serve the Glocal Parties with key notices of deadlines in the stipulation extending the bar date.  [D.I. 788 at Ex. 1 ¶ 10] (the "**Stipulation**") ("The Debtors stipulate that Debtors' claims and noticing agent did not serve the Glocal Parties with notice of the General Bar Date or entry of the Bar Date Order.").  The Debtors' Motion wrongly conflates subjective knowledge of these Chapter 11 Cases with proper notice and suggests that proper notice was not required.  As this Court has recognized, a creditor's subjective awareness of a bankruptcy proceeding does not excuse a debtor from providing said creditor with formal notice under the Bankruptcy Rules.  *In re Boy Scouts of Am. & Delaware BSA, LLC,* No. 20-10343 (LSS), ECF No. 11893, 18-19 (Bankr. D. Del. Mar. 11, 2024) ("[A]ctual knowledge of the chapter 11 cases does not neutralize or otherwise cure a debtor's failure to provide actual notice.").

counsel's conduct resulted from bad faith, rather than misunderstanding, bad judgment, or well-intentioned zeal." *Id*. "An award of fees under the court's inherent powers requires a similar finding [to that of § 1927]." *In re Orthopedic Bone Screw Products Liab. Litig.*, 193 F.3d 781, 795 (3d Cir. 1999).

16.  The Statement is not even on the spectrum of sanctionable conduct under *any* statute, including section 105(a) of the Bankruptcy Code or 28 U.S.C. § 1927.  The Statement was filed in good faith for the purpose of protecting the Glocal Parties' legitimate interests and to provide important context to the Court and parties-in-interest about the crux of the Glocal Parties' dispute with the Debtors.  Any costs incurred by the Debtors in responding to the Statement are entirely self-imposed, as the Statement did not seek any relief from the Court and required no response.  The Debtors only exacerbated these self-imposed costs when they repeatedly declined the Glocal Parties' requests to meet and confer with respect to the Debtors' issues with the Statement.  *See* **Exhibit A** to the Poppiti Declaration.

17.  Problematically, the Debtors finally only agreed to meet on the unreasonable condition that the Glocal Parties *first* withdraw the Statement.  This is unfortunate considering that the Glocal Parties were able to previously work with the Debtors to reach a resolution with respect to the Automatic Stay Motion and the Glocal Parties' motion to extend the bar date in these Chapter 11 Cases, which the Glocal Parties were forced to file after the Debtors repeatedly refused to extend the bar date—despite admitting their failure to properly serve the Glocal Parties.  Had the Debtors agreed to meet and confer, there is at least a reasonable possibility based on those prior resolutions that the Debtors' concerns with the Statement could have been resolved without either side incurring any further costs.

18. Instead, frustrated by the Glocal Parties taking appropriate steps to protect their rights and assert their claims against the Debtors in these Chapter 11 Cases—by filing proofs of claim (as required by the Court's bar date order and expressly authorized by the stipulation that the Debtors entered into), commencing an adversary proceeding (in accordance with the Bankruptcy Code and the Bankruptcy Rules), and reserving the Glocal Parties' rights with regard to the ongoing ownership dispute (in response to the Jennings Declaration and other filings)—the Debtors moved to *sanction* the Glocal Parties and their counsel, improperly alleging that the legitimate steps by the Glocal Parties are a "transparent attempt to disrupt these proceedings and coerce the Debtors" and to "weaponize the judicial process." Motion at ¶¶ 2, 52. The notion that significant stakeholders and litigation counterparties, such as the Glocal Parties, should have to defend against a motion for sanctions from an estate fiduciary for protecting their rights and asserting their claims—let alone be sanctioned—is deeply troubling. If anything, the ***Debtors' conduct*** in this regard should entitle the ***Glocal Parties*** to be reimbursed for the fees and expenses that the Glocal Parties have incurred defending against the Motion because the ***Debtors*** are the ones weaponizing the judicial process.

19. Indeed, the Debtors' allegations of an "abuse of process" against the Glocal Parties are preposterous. If accepted, the Debtors' accusations against the Glocal Parties would stifle any reasonable advocacy and process that is commonplace in any complex chapter 11 case.

20. In light of the extremely high standard for imposing sanctions under 28 U.S.C. § 1927 or the Court's inherent powers under section 105(a) of the Bankruptcy Code, and given the Glocal Parties' good faith efforts to (i) reserve their rights with respect to the ongoing ownership dispute and provide important context to the Court and (ii) meet and confer with the Debtors to resolve their issues regarding the Statement, the Debtors' request for sanctions should be denied.

## CONCLUSION

WHEREFORE the Glocal Parties respectfully request that the Court (i) deny the Debtors' Motion and (ii) grant them any such other and further relief, at law or in equity, as it finds proper.

*Remainder of page intentionally left blank*

| | |
|---|---|
| Dated: August 26, 2024<br>Wilmington, Delaware | Respectfully submitted,<br><br>**YOUNG CONAWAY STARGATT & TAYLOR, LLP**<br><br>*/s/ Robert F. Poppiti, Jr.*<br>Matthew B. Lunn, Esq. (No. 4119)<br>Robert F. Poppiti, Jr., Esq. (No. 5052)<br>1000 North King Street<br>Wilmington, DE 19801<br>Telephone: (302) 571-6600<br>Email: mlunn@ycst.com<br>    rpoppiti@ycst.com<br><br>-and-<br><br>**PAUL HASTINGS LLP**<br>Paul R. Genender, Esq. (admitted *pro hac vice*)<br>Jake Rutherford, Esq. (admitted *pro hac vice*)<br>2001 Ross Avenue, Suite #700-168<br>Dallas, TX  75201<br>Telephone:  (972) 936-7500<br>Email:  paulgenender@paulhastings.com<br>    jakerutherford@paulhastings.com<br><br>-and-<br><br>Alex Cota, Esq. (admitted *pro hac vice*)<br>Sam Lawand, Esq. (admitted *pro hac vice*)<br>Xue Yu, Esq. (admitted *pro hac vice*)<br>200 Park Avenue<br>New York, NY 10166<br>Telephone:  (212) 318-6000<br>Email:    alexcota@paulhastings.com<br>    samlawand@paulhastings.com<br>    xueyu@paulhastings.com<br><br>-and-<br><br>Conrad Coutinho, Esq. (admitted *pro hac vice*)<br>Brian Kay, Esq. (admitted *pro hac vice*)<br>600 Travis St., Floor 58<br>Houston, TX 77002<br>Telephone:  (713) 860-7300<br>Email:    conradcoutinho@paulhastings.com<br>    briankay@paulhastings.com<br><br>*Counsel to Glocal Healthcare Systems Private Limited, Dr. Syed Sabahat Azim, Ms. Richa Sana Azim, Mr. Gautam Chowdhury, and Kimberlite Social Infra Private Limited* |