IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------------x
In re:                                                         :    Chapter 11
                                                               :
UPHEALTH HOLDINGS, INC., *et al.*,[1]                          :    Case No. 23-11476 (LSS)
                                                               :
        Debtors.                                               :    (Jointly Administered)
                                                               :
                                                               :
---------------------------------------------------------------x

**NEEDHAM'S OBJECTION TO CONFIRMATION OF THE SECOND AMENDED COMBINED DISCLOSURE STATEMENT AND JOINT CHAPTER 11 PLAN**

To the Honorable Laurie S. Silverstein, United States Bankruptcy Judge:

Needham & Company, LLC ("**Needham**") objects to confirmation of the Debtors' *Second Amended Combined Disclosure Statement and Joint Chapter 11 Plan*. *See* ECF No. 1196 (the "**Plan**").[2] In support of this Objection, Needham respectfully states as follows:

**OBJECTION**

*The Released Directors and Officers*

1. The Debtors seek to release *sixteen* current and former directors and officers under the Plan of all Claims and Causes of Action relating to the Debtors, these Chapter 11 Cases, the Thrasys Transition, the Plan, the Wind-Down, and any other act, omission, event or other occurrence relating to the foregoing. *See* Plan §§ 8.3 and 1.141 (definition of the "Released

---

[1] The debtors in the chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are as follows: UpHealth Holdings, Inc. (6328); Thrasys, Inc. (7413); Comprehensive Care Alliance LLC (6965); Behavioral Health Services LLC (8110); BHS Pharmacy LLC (2475); Psych Care Consultants LLC (8822); and Reimbursement Solutions LLC (6388). The debtors' headquarters and the mailing address is 14000 S. Military Trail, Suite 202, Delray Beach, Florida 33484.

[2] Capitalized terms used but not defined herein have the meanings given in the Plan.

1

Directors and Officers").[3] The Plan provides the Released Directors and Officers with broad immunity from estate claims, as well as releases by third parties who provide consent through an opt in. See Plan § 1.143 (definition for "Releasing Parties"). The Released Directors and Officers are not providing any identifiable consideration for these releases.

2.  Although the Plan does not propose non-consensual releases by third parties (avoiding issues similar to those in *Purdue Pharma*), the Debtors attempt to settle all estate claims against the Debtors' insiders out from under creditors. These settlements are based on agreements made by some of those very insiders, sitting on a "special" committee represented by the same counsel as the Debtors, based on vague and cursory statements in the Plan.[4] The Plan thus gives creditors little confidence the Debtors have fulfilled their fiduciary duties, and met their burdens under Bankruptcy Rule 9019 and the "entire fairness" standard required by Delaware state law for insider transactions.[5]

3.  For example, the Plan asserts there are "no non-frivolous claims" against the Released Directors and Officers because "in general" those insiders "were not involved in the negotiations or implementation of the roll-up of the Target Companies into UpHealth Services, Inc. and UpHealth Holdings, but either served at GigCapital2 prior to its combination with

---

[3] The "Released Directors and Officers" are Avi Katz, Luis Machuca, Raluca Dinu, Moshe Bar-Siman-Tov, Gil Frostig, John Mikulsky, Neil Miotto, Agnes Rey-Giraud, Mark Guinan, James Greene, Brad Weightman, Tara McDonough, Lisa Fluxman, Ben Hefflinger, Jay Jennings, and Jeremy Livianu.

[4] According to the Plan, upon the resignation of Dr. Martin Beck, the Debtors' former CEO and sole director, "UpHealth Holdings no longer had a board of directors…. Accordingly, the board of directors of UpHealth, Inc. appointed five of its members to serve as the board of directors of UpHealth Holdings. This board then named a special committee consisting of the same members of the special committee from UpHealth, Inc." See Plan § 4.3(j) n.26.

[5] "Entire fairness, Delaware's most onerous standard, applies when the board labors under actual conflicts of interest. Once entire fairness applies, the defendants must establish 'to the court's satisfaction that the transaction was the product of both fair dealing and fair price.'" See *Halperin v. Arawak IX, L.P.*, Adv. Pro. No. 21-51412 (BLS) (Bankr. D. Del. Mar. 13, 2024) (quoting *In re Trados Inc. Shareholder Litig.*, 73 A.3d 17, 44 (Del. Ch. 2013)).

UpHealth Holdings …, or did not serve at UpHealth, Inc. until after the combination with UpHealth Holdings." *See* Plan § 4.3(s). But there are pending actions against certain of the Released Directors and Officers that make specific allegations, which suggest this vague statement about timing may obscure the truth in order to get this Court to approve compromises that would allow them to walk away from their wrongdoing without consequence. Indeed, in one, a motion to dismiss was denied.[6]

4. The Plan fails to present any justification and support (in the form of testimony or other evidence) to substantiate the proposed, no consideration D&O releases, especially in light of these outstanding allegations. It is the Debtors' burden to provide a meaningful assessment of the claims they seek to release beyond their conclusory statements, describe the process they undertook to assess those claims, and state with specificity how they reached their conclusion for each of the sixteen Released Directors and Officers. Releasing insiders without a definitive assessment of their potential liability can have a significant impact on the value available for creditors in these cases. If there are viable claims against these individuals, creditors will be disadvantaged by releases without sufficient justification or transparency regarding the legal risks involved. The need for this kind of assessment is especially critical in these cases, where several business transactions arranged by insiders in connection with a SPAC have left the company with minimal distributable value for creditors and in some cases led to litigation. *See* Plan § 4.2.

---

[6] *See, e.g.*, *Laidlaw v. GigAcquisitions2, LLC*, No. 2021-0821-LWW, 2023 WL 2292488, at *1 (Del. Ch. Mar. 1, 2023) (declining to dismiss breach of fiduciary duty and unjust enrichment claims against Released Directors and Officers Katz, Dinu, Miotto, Mikulsky, and Frostig relating to the GigCapital2 SPAC).

*See also Edwards v. Gigacquisitions2, LLC*, C.A. No.: 2024-0591 LWW (Del. Chan. 2024) (the "Edwards Litigation"). The Edwards Litigation asserts claims against two Released Directors and Officers, Avi Katz and Raluca Dinu, for negligent misrepresentation, civil conspiracy, and deceptive trade practices, among other claims. The Edwards Litigation alleges that Katz, as chief negotiator, led the charge in fraudulently inducing Cloudbreak Health LLC ("Cloudbreak") to enter into a merger with several companies via a "sham" SPAC transaction by GigCapital2. *See First Amended Verified Complaint* in *Edwards v. Gigacquisitions2, LLC*, C.A. No.: 2024-0591 LWW (Del. Chan. 2024).

3

*The Retained Actions Against Needham*

5.  While effectively offering their insiders a "free pass" through insider settlements, the Debtors intend to preserve "claims" against Needham, potentially using the limited value remaining for general unsecured creditors in a baseless pursuit against it.  Any dispute between Needham and the Debtors, however, was fully litigated and resolved on a final basis in New York State Court.  As this Court is aware, Needham obtained an approximately $37.8 million judgment against UpHealth Holdings prior to the commencement of these cases.  *See* Proof of Claim No. 13.  Pursuant to a stipulation approved by this Court (*see* ECF No. 193), UpHealth Holdings appealed Needham's judgment.  The Appellate Division for the New York State Supreme Court affirmed that decision on May 9, 2024.  UpHealth Holdings sought leave to appeal the judgment to the New York State Court of Appeals, which denied that request on January 14, 2025.  As a result, Needham's judgment is final and the grounds for asserting its claim against UpHealth Holdings are fully litigated.

6.  Because Needham's claims against UpHealth Holdings involved its only relationship with the Debtors, any claim that the estate may have against Needham arises from that relationship.  Accordingly, to the extent that the Debtors had claims against Needham, they were required to assert them in the New York State Court litigation.  They must be pled, or they are waived.[7]

---

[7] *See Matter of Hunter*, 4 N.Y.3d 260, 269-70 (N.Y. 2005) ("Under the doctrine of res judicata, a party may not litigate a claim where a judgment on the merits exists from a prior action between the same parties involving the same subject matter. The rule applies not only to claims actually litigated but also to claims that could have been raised in the prior litigation. . . . Additionally, under New York's transactional analysis approach to res judicata, 'once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy.'") (citations omitted).

7. All of UpHealth Holdings' arguments, however, were rejected outright by the New York Courts. Any pursuit against Needham, therefore, is a futile exercise, a waste of estate resources, and barred by *res judicata* and collateral estoppel principles, as well as the doctrine of *in pari delicto*.

8. It is reasonable to assume that Needham's inclusion on the list of Retained Actions under the Plan is the result of Needham being named as a party in the Edwards Litigation. If so, that same logic should apply to, at least, Dr. Avi Katz and Dr. Raluca Dinu, named co-defendants in that litigation. That action arises from the plaintiffs' agreement in November 2020 to sell Cloudbreak to a SPAC, GigCapital2. In essence, the plaintiffs allege that Needham, by providing presentation materials to UpHealth Services, Inc. ("Services") (and not GigCapital2 or Dr. Katz, the plaintiffs' negotiating counterparties) about the value of the businesses before November 2020, misrepresented material facts. Although those claims against Needham are not before this Court, they are meritless and time barred. Among other reasons, the presentations by Needham were prepared for Services, its client, not the plaintiffs, and the presentations expressly provided that they only may be used by the intended recipients and are based on information from Services that was not independently verified by Needham as Services was well aware. Further, the plaintiffs commenced the Edwards Litigation in October 2024. Because the plaintiffs allege the misrepresentations occurred in June and September 2020, they are barred by the three-year statute of limitations for each of their claims.[8]

9. More importantly, it was the CEO of GigCapital2, Avi Katz, who was "primarily responsible for negotiating with Cloudbreak and convincing them of the deal's merit[,]" not

---

[8] *See* Needham's Motion to Dismiss in *Edwards v. Gigacquisitions2, LLC*, C.A. No.: 2024-0591 LWW (Del. Chan. 2024).

Needham or Needham's then-client, Services.[9] Therefore, the rationale for retaining claims against Needham applies with equal or greater force to Dr. Katz as well, unless the Debtors can provide a valid explanation for why they believe this distinction is justified.

10. In light of the conclusory statements about the releases of insiders in the Plan, and approval of the releases by a "special" committee which in fact is not special or independent at all, Needham doubts there is a valid basis for making this distinction.

11. Alternatively, the retention of potential claims against Needham appears proffered to provide some symmetry for the treatment of the Glocal Respondents under the Plan. The Glocal Respondents, in an adversary proceeding before this Court, have sought to amend their complaint and add Needham as a defendant, making effectively the same factual allegations made in the Edwards Litigation.[10]

12. But there is no symmetry.

13. The Debtors hold an approximately $110 million confirmed arbitration award against the Glocal Respondents based on their refusal to turn over control of their business to the Debtors after the Debtors provided the Glocal Respondents with $72 million in cash transaction consideration (which the Glocal Respondents have dissipated). Needham holds an approximately $37.8 million final judgment against UpHealth Holdings. The Debtors' claim to the $110 million from the Glocal Respondents is definitionally not specious or time barred. Potential claims against Needham are both specious and time barred. The Glocal Respondents and Services—long before Needham was retained by Services—represented that the UpHealth opportunity was significantly

---

[9] *See First Amended Verified Complaint* in *Edwards v. Gigacquisitions2, LLC*, C.A. No.: 2024-0591 LWW (Del. Chan. 2024) at 27-28.

[10] *See Glocal Healthcare Systems Private Limited v. UpHealth Holdings Inc. et al.*, Adversary No. 24-50092 (LSS) (Bankr. D. Del. 2024), ECF No. 134.

higher than the valuation presentation prepared by Needham based on data provided by Services. Further, the alleged misrepresentations in this presentation were made throughout the period of March 2020 to October 2020. A negligent misrepresentation claim, however, is subject to a three-year statute of limitations, and thus any action against Needham is time barred.[11]

14. Furthermore, because the valuations in the Needham presentation materials were provided by the Debtors and expressly not independently verified by Needham, if there was any wrongdoing by Needham (and there was not), Needham stands *in pari delicto* with the Debtors and their estates cannot successfully pursue a claim.[12]

15. Under these circumstances, the Debtors must also explain how retaining causes of action against Needham will not divert the funding of the litigation trust in the pursuit of meritless claims in contrast to being preserved for pursuing the Glocal Respondents.

## **CONCLUSION**

WHEREFORE, for the foregoing reasons, Needham respectfully requests that this Court narrow the releases of directors and officers under the Plan, deny confirmation, and grant such other relief the Court deems just and proper.

---

[11] *See Needham & Company, LLC and the Needham Group, Inc.'s Opposition to Plaintiffs' Motion for Leave To File a Third Amended Complaint* filed in *Glocal Healthcare Systems Private Limited v. UpHealth Holdings Inc. et al.*, Adversary No. 24-50092 (LSS) (Bankr. D. Del. 2024), ECF No. 142.

[12] *See Official Committee v. R.F. Lafferty Co.*, 267 F.3d 340 (3d Cir. 2001) (holding that the doctrine of *in pari delicto* barred claims of a creditors' committee standing in the shoes of debtor corporations because the fraudulent conduct of the corporations' managers was imputed, and therefore precluded recovery against third-party defendants); *see also Indus. Enters. of America, Inc. v. Mazzuto, et al., (In re Pitt Penn Holding Co.)*, 484 B.R. 25, 39 (Bankr. D. Del. 2012) (applying the *in pari delicto* doctrine).

Dated: February 3, 2025
    Wilmington, Delaware

*/s/ Zachary J. Javorsky*
Daniel J. DeFranceschi (No. 2732)
Cory D. Kandestin (No. 5025)
Zachary J. Javorsky (No. 7069)
**RICHARDS, LAYTON & FINGER, P.A.**
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
Email: defranceschi@rlf.com
    kandestin@rlf.com
    javorsky@rlf.com

Edward Flanders
Andrew M. Troop
Andrew V. Alfano
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
31 West 52nd Street
New York, New York 10019
Tel.: (212) 858-1000
Facsimile.: (212) 858-1500
Email: edward.flanders@pillsburylaw.com
    andrew.troop@pillsburylaw.com
    andrew.alfano@pillsburylaw.com

*Counsel for Needham & Company, LLC*